Good morning. May it please the Court, Eric Green for the School District. What we have in this case are multiple agencies that are responsible for helping children, and the school district's responsibility is to educate the children where it finds them. Department of Child and Family Services, their responsibilities are elsewhere. They are in charge of their child protection agency. They are responsible for the overall well-being of the child, and issues like reunification, other types of circumstances. May I ask you right at the beginning, what supports your argument that if a student is placed in a residential facility by the County Department of Children and Family Services, a school district is then relieved of its obligation to consider residential placement? I think there's a confusion in this case between where a child resides and the educational services. So a residential placement is not special education, and it's not a related service. Under the CFR 34300.104, it says if a residential is necessary so that special ed services or related services can be provided, then it has to be provided. But residential is not itself a special education service. Second, doesn't the regulation provide that, I think the district court judge was referring to 34 CFR section 300.115A, that the LAUSD must ensure that a continuum of alternative placements is available, and that this continuum of alternative placements may include placement in a public or private residential program. What does that mean? Well, the program is not the services. So let me give you an example, Your Honor. If you look at, and this is at page 109 and 110 of our brief in the appendix. No, I don't think it's, I see, of course not. But what they're saying is that some children, students would require placement in a private residential in order to maximize the services that are required to be given to them so that they can have a free and fair. I don't think it's maximize, Your Honor, but yes, in order to provide. Enhance, make it happen. Okay. So that their education is appropriate. Again, I think there's confusion over where the child is residing and what the services are. So as an example, with respect to a hospital, if you have a child with a broken leg in a hospital, we find the child at the hospital and we provide services in the hospital. We don't get in the middle of, should the child go home? Should the child go to a different hospital? Here we have a child in a licensed children's institution. And the framework says, call the school district, tell them we have a child here who needs to be educated. Then if you look at 56157, this is a critical statute, Your Honor, 56157 of the Education Code. It's at 109 and 110 of our appendix. It says once the child is in that location, we can serve either through public agencies or a non-public agency. And in subsection C of 56157, this is very telling. It says if an individual with exceptional needs residing in a licensed children's institution is placed in a non-public school, the local education agency shall conduct an annual evaluation to determine whether the placement is the least restrictive environment. So they use those terms differently. Reside, child is residing in the LCI. The placement is the non-public school. And what's happening in this case is they're conflating the two. And there's a reason why. The advocates on the other side, I appreciate their well-intentioned, but I think it's misguided. They're trying to take the stay put rule and make it applicable to DCFS's decision as to where the child should reside. Because DCFS is not a local education agency, so there's no stay put. So in this case, if you look at their brief. Right, it's clear they're trying to make stay put and other things that pertain to IDA. They're saying it should apply even if the residential placement is done by another agency in the first place. But what they're also saying is that just because the residential placement has been done by another agency, that does not excuse the school from independently making a determination as to whether or not a residential program should be required. That would be the case if, for example, let's say DCFS said, as they're required to under the statute, we plan to discharge student from the LCI. Because that's their decision. The court has directed DCFS to decide where should this child reside. And then they say, okay, there's improvement, mental health needs, family reunification considerations. That's all taken care of. We plan to release her from. At that point, we would be at the beginning. We would have an IEP, and it's possible, it seems unlikely, that a consideration was designated residential. But what they're trying to do in this case, Your Honor, is while the child is already residing in the LCI, based on a framework where DCFS decides that, have us get in the middle of that. Just like DCFS should not get in the middle of what we're doing to educate the child, we should not get in the middle of where the child is residing. Well, but don't you have a continuing obligation under the IDEA even if the child is placed in a residential program by the agency? We have an obligation to provide special education and related services. Again, back to 300.104. If the child needs residential to provide, for us to provide those services, she must be placed in residential. But here the child's already in residential. Right. But don't you then still have the obligation to provide educational services? Yes, we did. And there's no dispute. In fact, the dispute in this case was there are a number of issues in due process, and we won on all of them. So the administrative law judge and the district court basically agree that we provided the FAPE. So there's no issue in this case of providing FAPE. The only question is this abstract question. Should we have had a duplicative offer to provide a residential placement? And the answer is no, because it would cause a lot of problems, because DCFS has a different mandate. And let me tell you why this is critical. If you look at their brief, page 2627 of their brief, okay, at the bottom of 26 and the top of 27, it says this is talking about their stay-put motion, okay, bottom of 26 and top of 27 of Appley's brief. It says the stay-put motion was impossible due to the fact that MS's IEP listed VISTA school as her educational placement. This is the critical part. Had the IEP listed residential placement in the VISTA facility, MS could have filed a motion to prevent or delay any change of residence to ensure that such a move was educationally appropriate and or made with the least amount of disruption. They're trying to ask this court to impose this blocking option for the act. The stay-put, so let's go back. The stay-put just says we're going to, while we're making a decision about where is the next appropriate place for you, you're just going to stay here. We're not going to yank you out and put you in limbo, right? Well, 99% of the time, stay-put placement has nothing to do with where a child is residing. Not where they're residing, but in terms of residential, but in terms of where they're attending school. It's the services. Yes, so for example, this is a little tricky in this case because you have a residence in the residential placement at Vista Del Mar and a separate non-public school. So the non-public school is the educational placement. The residence is the mental health placement. And what they're trying to do is they're saying they agree that a student was in the non-public school and that would be stay-put and it was. What they want to do is import that into the DCFS process. So in other words, whereas there's no jurisdiction under the IDEA to tell a mental health child protective agency what to do because they're best positioned to decide what's in the needs of the interest of the child. They want to import that over as an option. So that way, let's say they didn't want in this case, the student didn't want to leave the lockdown facility, which seems unlikely, then the government would have been blocked because of the IDEA. See, they're conflating the residence of the child with the, with the services being provided. In most state-put instances, it's, okay, you may be receiving, you're in a special day class and we want to move you to a resource class. You file for due process. You have to stay in the special day class. Or it could be an NPS. You're in a non-public school receiving services X. We want to lower it down to a special day class. You file, stays there. But what's different here is the residence. She's residing in a mental health facility. That's what they want to get in the middle of. And we shouldn't have anything to do with that. And I think that's where the district court got confused in this case. She's confusing the, the residential component with the, with the educational placement. I don't know. Judge Snyder doesn't often get confused. Well, I apologize. I didn't mean it in a pejorative way, Your Honor. Okay. By no means was intended. I realize that. I realize that. I'm just, I'm trying to see where she, can you point to me where this confusion in her opinion shows itself? Well, I think it's because it's, it's the fact that they're saying that a residential placement should also be offered, even though the child is already in a residence. I think the best place to look at it is in 56157, Your Honor. If you look in the statute, it says, it separately distinguishes. Do you have that on page 109 and 110 of the appendix? If you look at the bottom of 109. Okay. And the top of 110. All right. So, it starts off, it says, in A, in providing services to individuals residing in licensed children's institutions or foster family homes, the local educational agency shall first consider services operated by public agencies. If those programs are not appropriate, special ed related services shall be provided by an NPS. Okay. So, that's the premise. We either find a local public agency. Then you jump down to C. It says, if the child is placed in a non-public, non-sectarian school, okay, if a child, if an individual with exceptional needs residing in an LCI is placed in an NPS, the local ed agency shall make, shall conduct an annual evaluation in accordance with federal law to determine whether the placement is the least restrictive environment that is appropriate. So, that paragraph distinguishes between the residence and the placement. And that's the distinction in this case. If there were no mental health treatment being provided, and this was simply just a non-public school, we wouldn't be here. The difference is, we have a social welfare agency whose job it is to protect children, reunification, other health and welfare goals, and it's separate, and it's not our expertise. We don't have the skill to say, should student be in a mental health treatment or not for her non-educational purposes. We only have the expertise to educate her. And as I said, in this case, I'm going to ask to reserve the remainder if you don't mind. In this case, there's no dispute that we provided a free, appropriate public education, except for that one issue that they prevailed on below. We provided all the services. What they're saying is, hypothetically, we should have made this offer so it would have been the same residential offer, and then had they wanted to, a certain state put, they could have kept student. In vista. Exactly. Mr. Green, can I tell you, here's my understanding. The ALJ found, this is a quote, student had not met her burden of demonstrating that the Los Angeles Unified had an obligation to offer student a residential placement. Excerpts of Record 142. And the district court just disagreed. The district court said, the district had an independent obligation to ensure a continuum of alternative placements were available to meet MS's educational needs, and to consider whether a residential placement was considered necessary. Isn't that the nub of the case here? Yeah, I think so. They thought, Judge Schneider found that you had that obligation. The ALJ said you didn't. Yeah, it's a pure legal issue. And I think that it is a very complicated statutory framework. And what we have to keep in mind is there are multiple agencies with different areas of expertise. It's not in the best interest of children to get the school district involved in what DCFS is best at. And it's not in the best interest of children to get DCFS involved in what school districts are best at. Well, if the agency had her in a residential placement, and then was going to transfer her out of that, at that point would you be required to consider the residential placement? That's exactly right, Your Honor. So that's all we're talking about is the stop, stay put. Yeah, I think that's what it seems like. I think that they want to, they said 26 and 27 of the brief that they want to be able to stay put her in the VISTA residential. And there's probably a secondary thought like you just mentioned, Your Honor, that when that moment comes, they want that as another issue on stay put potentially. All right. We'll give you a couple. Thanks so much. Good morning, Your Honors. Allison Holcomb on behalf of student MS. I would like to respectfully disagree with my colleague that this is a question. I think this is actually a simple, straightforward question of what LAUSD is required to do under the IDEA. And that is to consider the full range of educational placements for the student MS. So we are not asking that LAUSD impose on DCFS's mental health placement. We have not taken any issue with the choices that DCSF made. What we're asking is what the IDEA requires, which is that when evaluating what MS needed, was to consider whether or not she needed placement in a residential facility like VISTA for educational purposes. There's the possibility that if that evaluation took place, the answer would be no, that it purely was a medical placement and things would proceed as Mr. Green explained. But the position that LAUSD has taken is that as long as the student was in a residential facility, for educational health reasons, they did not even need to consider whether or not she needed the exact same placement or a similar placement for educational purposes. And the problem with that comes, as was just discussed, is that because the DCFS placements and the IDEA placements are made for different reasons and under different criteria, should DCFS decide that under their own criteria, the placement in VISTA is no longer appropriate, they can move her without any consideration of whether or not she still needs to remain in the VISTA facility for educational purposes. And because it's not on her IEP, because it wasn't considered for educational purposes, she loses the protection of the state put regulations, and therefore her education is disrupted. And this isn't a hypothetical. We saw that that's exactly what happened. DCFS made a decision without consultation with the IEP team. She was moved to a facility that was far less restrictive, with no consideration of what she needed in terms of transition for educational purposes, and her education was disrupted for a several-month period. This is not an effort to apply state put to a DCFS placement. It's an effort to receive an IDEA placement and all of the state put protections. So are you saying that the plan, the IEP plan that was in place, didn't even consider residential placement as part of the educational plan? Correct. The district has taken the position from the beginning, from the OAH hearing, that they didn't even need to consider whether or not an educational placement was necessary because she was already in this facility. Suppose they considered it and decided it wasn't necessary. Then it would be a situation very similar to what Mr. Green described. Her placement would be only in non-public school, and as long as the DCF would be free to change her mental health placement and residence as they saw fit under their. All you're asking for is a rule that they must consider residential placement as part of the FAP, even though the student is already placed residentially anyway. That's correct, although I would suggest that we're not asking for a rule, simply that the rules that are in place are followed, which is the IDEA itself, and that the full continuum of educational placements be considered. We're not asking for a new case law in this situation because the IDEA is the only law that speaks to what must be included in an IEP, what services must be offered, which is the question here. There is no case law or no statute that has been cited or that I'm aware of that abrogates that responsibility because the service is being offered from some other agency or some other source. I think what I would refer to as the reimbursement cases speak to that. Under the IDEA, if a parent is unhappy with the offer of FAPE that had been made by a school district and chooses to place their child into a private program on their own, on their own payment, out of their own pocket, and is then able to prove that that is the proper placement and that the school district failed to offer a FAPE, then the school district has to reimburse the parent for that. There's no question of, well, if there's another person or another agency that's willing to provide these services, then the school district is off the hook for that, which is the situation that LAUFC is asking to create here, which is if somebody else or some other agency is willing to provide it, then somehow the IDEA obligation is lessened. Ms. Holcomb, what's your answer to Mr. Green's point that the district court conflated the idea of a free and appropriate public education with where the MS lived? And the residence has nothing to do with this. At least that's the way I understood his argument. I don't want to characterize what he said. Sure. Go ahead. I would say that Judge Snyder understood exactly how these two schemes operate and that they are separate and parallel statutory schemes that apply to different things. And to a sense, my colleague, Mr. Green, is correct in that it doesn't matter where the student lives. No matter where the student resides, the school district needs to consider the full spectrum of educational placements. And they need to consider whether or not she needs to be in a residential facility in order to access her education, whether she's living at home, whether she's living in a foster home, or whether she's living in a children's institution for mental health reasons. And if they don't consider that, that's a procedural error? It's a procedure. It's a procedure. It's predetermination under the Ninth Circuit's rule. Okay. Well, this is complicated. And, I mean, as I understood what your opposing counsel said, when a decision was made, say in the mental health, that a new placement was needed, they would automatically consider the educational requirement residential if the residence was going to change. But because it changed from the same agency to a lesser restrictive environment, there is no obligation as long as under that agency. I'm sorry. No obligation to consider residents for the purposes of education. Sure. So the way it played out was because MS's IEP didn't have a residential component. The only thing that was required by the IEP was that she be enrolled in a non-public school. So when DCFS sought to change her residence and her mental health placement, there was nothing that said she needed to stay in this facility for educational reasons, which is the problem, which is why the consideration of the educational placements needs to take place while she's still in the facility and not after DCFS makes their decision. Because had the proper IEP been in place, what hopefully would have happened is that when DCFS went to change her mental health placement, they would have realized that she had an IEP in place that also kept her at VISTA. And then hopefully the two groups, the two teams that were responsible for the student under the different agencies would have worked together. And we see in the transcript of the October 21st IEP meeting that these teams are somewhat in communication, would have realized that maybe she needs more time in VISTA for educational reasons, or maybe she's going to need additional educational supports to make this transition. Any change would have been done appropriately and with consideration of her educational needs. But because it wasn't on the IEP, because the IEP didn't say that she needs this residential component for educational purposes, she could be moved without consideration as long as she was enrolled in a non-public school, which was not adequate to address her at the time very severe mental health needs that required her to be in a restrictive environment to access her education. And the school district refused to consider. They said that they did not even consider whether or not she needed placement in such a facility. We see that there's a history of three or four previous IEPs of her educational rights holder agreeing to implement the IEP, but refusing to agree that it supplied a free and appropriate public education in at least two of them. She asked or indicated that she believed MS needed residential placement or asked for an evaluation for residential placement. At her own expense, MS obtained an educational-related mental health assessment by Dr. Large, who reached the same conclusion that while everybody hoped that the student would eventually be downgraded to a lower level of care, at the time she still needed that same restrictive therapeutic environment for educational purposes. And that report was provided to the school district, but was not reviewed before the October 21st IEP. And the ALJ agreed that was one of the few issues that student won at the ALJ level,  So there was a history of a student trying to make it clear that they believed that the residential placement needed to be included in the IEP, and the school district not considering it. And they have taken the position at every level of this dispute that they legally did not need to even consider it. They were allowed to limit the continuum of placements that were considered, simply because she had been placed in VISTA for other mental health reasons by a separate agency. Thank you. If there's any other questions, I would just like to just point out the importance here that the statutory scheme, the state statutory scheme that the school district has relied on, is not something, none of these statutes speak to the ultimate question here, which is what should be on the IEP. The only law that governs what needed to be considered and offered to student in terms of her educational placement is the IEP. We don't take the position that any of these state laws actually conflict. We think that if you look at the text of these laws, they often assume that an IEP is in place, and they're simply instructing the different agencies how they need to work together to make sure they're implemented, especially for vulnerable students who are court involved or in foster care. But should any of these state laws actually conflict with the IDEA, then they would be superseded by the IDEA, which is as outlined in our briefing. And then finally, the 56157 argument was also rejected by the district court. Under the school district's interpretation of 56157, which they argue says that if a student is in a licensed children's institution, that the statute says the only placements that need to be considered are a public school or a non-public school and not anything with a residential component. However, the district court rejected that argument because that statute doesn't only cover students who are in licensed children's institutions, but children who are in foster family homes. So under the school district's interpretation, if a student was in a foster family home which has no therapeutic component, that 56157 would cut off the school district from considering residential placement for educational purposes if it was called for. And as the district court said, that simply cannot be the law. May I go back to Judge Pratt's question about the failure of the school district to provide or consider a residential placement is a procedural error. How does this procedural error rise to the level of the denial of FAP? Sure. It's a procedural error that was supposed to be procedural and a substantive error. Under the Ninth Circuit's tests, the law, it's – Doug C. says that if a procedural error leads to a situation where other educational placements would have likely been considered, then that's also a substantive error that leads to a denial of FAP. And here it's certain that the nature of the procedural error is that they failed to consider other educational placements, and therefore it's both a procedural and a substantive violation of the IDEA. Thank you. Thank you, Your Honor. Just a few points in rebuttal. First of all, it's not the goal of the IDEA to offer something. It's the goal to provide the FAP, and that's what was provided here. What they're calling for on the student side here is a duty to make an offer of something we think is not appropriate anyway. But even if we accepted that, making an offer is not the providing of a FAP. Providing a FAP is providing the services which were provided in this case. What they want is this duplicative offer. The second issue is what would happen if we had to do this, if we had to make a duplicative offer? Now, the question was asked to my learned colleague here. If we had to make the offer and we didn't offer a residential placement, they could file for due process. Now we'd have a whole due process hearing. DCFS is saying the child needs to be over here residential. Now we have an administrative law judge adjudicating a case. What's going to happen? DCFS is going to intervene in the due process hearing to say, no, we want the child to be over here. On the other hand, if we say, yes, we should have a student in a residential placement, then they want to use that as stay put if DCFS wants to move the child. So this is going to create a big mess, and it's nowhere in the IDEA, and it's nowhere in the education code. Mr. Green, if I can get an additional minute from my presiding judge. Are you telling me the sky is falling here, that if the circuit upholds this ruling, that it's going to require school districts to worry about placement in residence of every child that seeks an individual education plan? No, what's going to happen is children who were placed by DCFS in licensed children's institutions, now school districts are going to feel they have to piggyback on that. And then one of two things will happen. If the school district disagrees with the DCFS placement, or even if they agree and they offer an alternative one, now you're going to have dueling placement debates. And if the district agrees with it, they're going to use it as stay put to block DCFS, and you're going to have all sorts of parallel litigation. So it is a sky is falling situation. That's why we brought it to this court. Now, I want to make an important observation about why is it that we're serving the child in this particular LCI. Well, the reason is the code says school districts need to educate children who are residing in an LCI within their jurisdiction. Why is that the case? Well, because typically school districts educate those in the boundaries of the school district. So it's proof that they're looking at the residence of the child when it's the LCI. The focus of it is, okay, we have a child in our territory. Not change the territory. Let's move the child to some other location. So it's the tail wagging the dog on that. I just want to make a final point about Judge Nelson had a question about discharging of DCFS's obligations. Once DCFS is done, once they say we no longer need to be involved, let's say there's reunification, so the child is placed in a foster home or is placed with the parents. Now, wherever that child lives, let's say the parents live in another school district, that school district is going to provide services. If it's in our school district, then we're going to provide services from the full continuum. It could be a residential placement, but it's going to be based on that residence where the child is then residing. But in this case, the child was residing in an LCI placed by DCFS. I hope that makes sense. If there aren't any further questions, we'll submit. All right. Thank you, counsel. Thank you very much. MS versus LA Unified School District is submitted.
judges: D.W. Nelson, Wardlaw, Pratt